Reed W. Larsen - Idaho State Bar #3427
Javier L. Gabiola - Idaho State Bar #5448
COOPER & LARSEN, CHARTERED
151 North Third Avenue, Second Floor
P.O. Box 4229
Pocatello, ID 83205-4229
Telephone: (208) 235-1145
Facsimile: (208) 235-1182
reed@cooper-larsen.com
javier@cooper-larsen.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FAISAL F. AMANATULLAH, M.D., | Case No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| THE UNITED STATES LIFE INSURANCE COMPANY OF THE CITY OF NEW YORK, AIG BENEFIT SOLUTIONS, AIG AFFINITY BENEFIT SOLUTIONS, AMERICAN INTERNATIONAL GROUP, INC. and AMERICAN GENERAL LIFE COMPANIES, LLC, | |
| Defendants. | |

COMES NOW Plaintiff, Faisal F. Amanatullah, M.D., by and through his attorneys of record, and for a cause of action against the above named Defendants, states and alleges as follows:

/

/

/

**GENERAL ALLEGATIONS**

I.

Plaintiff Faisal F. Amanatullah, M.D., an individual, is a resident of the city of Pocatello, county of Bannock, state of Idaho.

II.

Defendant The United States Life Insurance Company in the City of New York, which is a part of American International Group, Inc. is a corporation organized under the laws of the state of Delaware, and licensed to do business in the state of Idaho, and to issue policies for disability insurance coverage. Plaintiff shall refer to Defendant The United States Life Insurance Company in the City of York as "USLIC" throughout this Complaint.

III.

Defendants AIG Benefit Solutions and AIG Affinity Benefit Solutions are business entities which are a part of American General Life Companies, L.L.C., all of which are organized under the laws of the state of Texas, and licensed to do business in the state of Idaho and to issue and/or administer policies for disability insurance coverage. Plaintiff shall refer to Defendants AIG Benefit Solutions and AIG Affinity Benefit Solutions collectively as "AIGBS" throughout this Complaint. Plaintiff shall refer to American General Life Companies, L.L.C. as AGLC throughout this Complaint.

IV.

Defendant American International Group, Inc. is a corporation organized under the laws of the state of Delaware, and licensed to do business in the state of Idaho and to issue policies for disability insurance coverage. Plaintiff shall refer to Defendant American International Group, Inc. as "AIG" throughout this Complaint.

V.

Plaintiff obtained Disability Insurance Policy No. G-189, 553, Certificate No. 2328149 on February 19, 1987.  The policy provided coverage in the event Plaintiff was to become disabled. *A copy of the policy is attached hereto as Exhibit A and incorporated herein by reference.*  The policy was in full force and effect from approximately February 19, 1987 through the present, and, on August 16, 1998 Plaintiff became disabled and started receiving a lifetime disability benefit payable at $5,000 per month pursuant to the terms of the aforementioned policy.  Plaintiff has paid all premiums due under the policy and performed all of the conditions required by the policy.

VI.

In November of 2008, Plaintiff spoke with John Butryman, Senior Case Manager for AIGBS. to confirm that Plaintiff's receipt of $5,000 per month under the disability policy was a lifetime benefit, as he was disabled prior to the age of 50.  Plaintiff also needed confirmation of this as proof of income to provide to his lenders to obtain a mortgage.  In confirmation of that conversation, by letter dated November 24, 2008, Mr. Butryman confirmed that Plaintiff's receipt of $5,000 per month, post tax, under the disability policy was a lifetime benefit, as Plaintiff's disability began prior to the age of 50.  *A copy of that letter from Mr. Butryman is attached hereto as Exhibit B.*

VII.

In March, 2014, Plaintiff spoke with AIGBS Senior Claims Manager Bernadine Luddy, as he had not received his benefit check.  AIGBS erroneously sent the entire check to Plaintiff's ex-wife instead of to Plaintiff.  When Plaintiff notified Ms.Luddy of her/AIGBS's error, Ms. Luddy became hostile with Plaintiff.  Ms. Luddy further told Plaintiff that she/AIGBS would be reviewing his file, and that in August, Plaintiff's benefit of $5,000 would be reduced in September, 2014.  This

again, was in contradiction to the previously mentioned letter issued by AIGBS's Senior Claims Manager John Butryman that Plaintiff would have $5,000 per month for as long as he lived.  *See Exhibit B attached hereto.*

## VIII.

By letter dated April 14, 2014, Plaintiff, through his then attorneys, pursuant to Idaho Code § 41-1839, sent a Proof of Loss to AIGBS and USLIC requesting the following: (1) that AIGBS discontinue withdrawing child support payments from Plaintiff's monthly benefit, as his two children were emancipated, or soon to be emancipated; (2) that AIG provide timely disbursements of Plaintiff's monthly benefits by electronic deposit, as AIG had repeatedly been late in paying the monthly benefits; and (3) that Defendants not decrease Plaintiff's $5,000 monthly benefit in September of 2014.  *A copy of the aforementioned letter is attached hereto as Exhibit C.*  As asserted by Plaintiff's then attorney in the April 14, 2014 letter, Defendants' policy it issued to Plaintiff provided him with lifetime benefits of $5,000 per month as his disability began prior to age 50.  *See Exhibit A, Schedule of Benefits, page 2.*  Accompanying Plaintiff's attorneys' April, 14, 2014 Proof of Loss was a copy of the letter sent to Plaintiff by John Butryman.  Furthermore, in the aforementioned April 14, 2014 letter, while asserting that plain language of the policy provided that Plaintiff would receive lifetime benefits, Plaintiff also in the Proof of Loss asserted that should the Court find the policy ambiguous, the policy would be interpreted against Defendants, that Defendants were required to continue payments of $5,000 per month under the doctrine of promissory estoppel, since the letter from John Butryman confirmed that Plaintiff would receive $5,000 per month benefits for his lifetime, and he relied upon those statements to make financial decisions and would be damaged as a result, as well as informing Defendants that if they continued

to refuse to comply with the policy and the Proof of Loss demanded by Plaintiff, their conduct would constitute bad faith and negligent adjustment.

IX.

By letter dated May 19, 2014 AIGBS Senior Claims Manager Bernadine Luddy acknowledged receipt of Plaintiff's attorneys' Proof of Loss, as well as the letter authored by John Butryman of November 24, 2008, however, continued to hold to the position that under Defendants' interpretation of the policy, Plaintiff's benefit was still to be reduced effective September 1, 2014. *A copy of that letter is attached hereto as Exhibit D.*

X.

By letter dated June 19, 2014, AIGBS sent a letter to Plaintiff, but addressed to "Dr. Goodman" which stated that in advance, they were informing Plaintiff again, that they would be reducing his monthly benefit to $1,250.  *A copy of that letter is attached hereto as Exhibit E.*

XI.

By letter dated August 28, 2014, Bernadine Luddy at AIGBS sent Plaintiff another letter, reminding him that Defendants, again, were going to be reducing his monthly benefit to $1,250. *A copy of that letter is attached hereto as Exhibit F.*

XII.

By letter dated August 29, 2014 Plaintiff's then attorney faxed a letter to Bernadine Luddy again notifying Defendants that the policy entitled Plaintiff to receive $5,000 per month for the rest of his life, as he was fully disabled at the age of 49. *A copy of that letter is attached hereto as Exhibit G.* In that letter Plaintiff's counsel further reminded Defendants that Defendants confirmed that the policy provided Plaintiff with lifetime benefits at $5,000 per month, that Plaintiff relied, to

his detriment, upon those representations, and, again, demanded that Defendants continue to pay Plaintiff the $5,000 monthly benefits for the rest of his life, and not reduce that monthly benefit as they indicated their prior letters.  By letter dated September 5, 2014, Defendants through their representative Bernadine Luddy, responded to Plaintiff's attorneys' August 29, 2014 correspondence, and, again, indicated Defendants were going to reduce Plaintiff's benefits from $5,000 to $1,250 per month, effective September 1, 2014.  *A copy of that letter is attached hereto as Exhibit H.*  By letter dated September 12, 2014 Plaintiff's attorneys again reminded AIGBS that they were in violation of the policy, and that they could contact Plaintiff's counsel to discuss the matter if they realized their errors in their position.  *A copy of that letter is attached hereto as Exhibit I.*

XIII.

By letter dated October 23, 2014 Plaintiff's counsel notified Defendants' representative Yaidy I. Lukacs that Plaintiff would be pursuing litigation due to Defendants' reduction in Plaintiff's policy benefits, attached the Proof of Loss dated April 14, 2014 that was previously sent to Defendants, and notified Defendants that they had sixty (60) days from the date of the letter to reinstate Plaintiff's benefits in full, with appropriate back benefits and interest.  *A copy of that letter is attached hereto as Exhibit J.*

XIV.

By letter dated November 5, 2014, Defendants sent Plaintiff a letter requesting updated information related to his disability, along with a Claimant Questionnaire and Authorization for Plaintiff to complete.  *A copy of that letter is attached hereto as Exhibit K.*  Plaintiff completed the form and authorization, and provided Defendants with information related to Plaintiff's Medicare

plan.  Plaintiff faxed those documents to Defendants on November 12, 2014.  *A copy of those documents are attached hereto as Exhibit L.*

XV.

Despite Plaintiff's repeated demands to Defendants not to reduce his monthly benefits from $5,000 to $1,250, effective September 1, 2014, Defendants did reduce Plaintiff's monthly benefits to $1,250.

**BAD FAITH**

XVI.

Plaintiff re-alleges paragraphs I through XV above, and incorporates the same as though fully set forth herein.

XVII.

This action is brought for consequential and extra contractual damages due to Defendants' bad faith refusal to pay Plaintiff's $5,000 monthly lifetime disability benefits due him under the terms of the policy Defendants issued to Plaintiff.  Issuance by Defendants of the Disability Insurance Policy No. G-189, 553, Certificate No. 2328149 created a contractual relationship between Defendants and Plaintiff.  Defendants therefore were subject to the implied in law duty to act fairly and in good faith in order not to deprive Plaintiff of the benefits of the policy.

XVIII.

Defendants, through their representatives, agents and employs, acted willfully, fraudulently, intentionally and in bad faith as follows: (1) Defendants' refusal to discontinue withdrawing child support payments from Plaintiff's monthly benefit, despite Defendants' receipt of court orders and documents from Plaintiff that his two children were emancipated, or soon to be emancipated; (2)

Defendants' acts of repeatedly being late in paying to Plaintiff his monthly benefits; and (3) Defendants' denial and reduction of Plaintiff's disability benefits, despite the overwhelming evidence that under the terms of the policy, which Defendants admitted to in written correspondence to Plaintiff, that Plaintiff was entitled to a lifetime monthly benefit of $5,000. Defendants' aforementioned conduct, through its agents, representatives and employees, was done knowingly, intentionally, and with the purpose of discouraging, avoiding or denying the full payment of benefits due Plaintiff under the terms of the policy.

XIX.

Defendants had no legitimate or arguable reason for denying and reducing Plaintiff's disability benefits, refusing to discontinue withdrawing child support payments from Plaintiff's benefits check, being late in providing Plaintiff his benefits checks, and in refusing to meet the Proofs of Loss submitted by Plaintiff, Defendants have intentionally denied Plaintiff the full amount of benefits due him, without any legitimate or arguable reason for refusing to pay and/or reducing Plaintiff's disability benefits.

XX.

As a direct and proximate result of Defendants' intentional denial and reduction of Plaintiff's disability benefits, wrongful withdrawal of child support payments, continued delay and being late in paying Plaintiff his benefits, as well as Defendants consequential breach of the implied in law duty of good faith and fair dealing, Plaintiff has been financially burdened, and continues to be financially burdened without sufficient means to provide, care for and support himself and three other dependents.

XXI.

As a further direct and proximate result of Defendants' intentional and wrongful denial and reduction of Plaintiff's valid disability benefits and claims, wrongful withdrawal of child support payments, continued delay and being late in paying Plaintiff his benefits, Plaintiff has suffered significant anxiety and mental suffering regarding his financial ability to pay his bills, and maintain an acceptable standard of living.  Defendants' breach of the implied in law duty of good faith and fair dealing proximately caused Plaintiff significant emotional distress due to Defendants' wilful, intentional and fraudulent conduct as stated herein.

**BREACH OF CONTRACT**

XXII.

Plaintiff re-alleges paragraphs I through XXI and incorporates the same as though fully set forth herein.

XXIII.

Defendants have breached the contract of insurance by refusing to pay back disability benefits, and their denial of the full amount of Plaintiff's benefits and in reducing Plaintiff's benefits, such that Plaintiff has suffered damages in excess of $75,000, exclusive of attorney's fees and costs. Defendants have further breached the contract of insurance due to their wrongful withdrawal of child support payments from Plaintiff's checks, and their continued delay and being late in paying Plaintiff his benefits such that Plaintiff has suffered damages in excess of $75,000, exclusive of attorney's fees and costs. Defendants' conduct constitutes an ongoing breach of contract, as Plaintiff is entitled to receive back benefits due him, plus interest, plus ongoing monthly disability benefits at $5,000 per month through Plaintiff's lifetime, pursuant to the terms of the policy.  Further,

Defendants' breach of contract is ongoing and continuing with each passing month, and, Plaintiff is entitled to back benefits, interest and $5,000 monthly benefits for his lifetime.

## PROMISSORY ESTOPPEL

XXIV.

Plaintiff re-alleges paragraphs I through XXIII and incorporates the same as if fully set forth herein.

XXV.

By letter dated November 24, 2008 (see Exhibit B attached hereto) Defendants represented to Plaintiff that he had $5,000 monthly benefits for his lifetime. Plaintiff relied upon these statements, and purchased a home. Had Defendants not sent the letter and made the representations they did, Plaintiff would not have purchased the home, as he would not have been able to pay the taxes the on the home, the maintenance and heating, nor would the bank have lent him the money to purchase the home with a 30-year mortgage without the letter from Defendants explaining Plaintiff would receive a lifetime benefit of $5,000. In addition, Plaintiff also made other purchases based on Defendants' representation, two life insurance policies and multiple vehicles, with the expectation he would be receiving a lifetime benefit in that amount. Due to Defendants' representations, and subsequent reduction of his monthly benefits to $1,250, Plaintiff is facing a default on his mortgage and other bills resulting in substantial economic and financial loss to him, which Defendants should have recognized when it issued the aforementioned letter notifying Plaintiff that he was entitled to, and would be receiving a monthly benefit of $5,000 for his lifetime.

## NEGLIGENT ADJUSTMENT

XXVI.

Plaintiff re-alleges paragraphs I through XXV and incorporates the same as though fully set forth herein.

XXVII.

Pursuant to the policy Defendants issued to Plaintiff, Defendants had a duty to promptly and reasonably settle his claim. Defendants also had a duty not unreasonably deny the benefits due Plaintiff under the terms of the policy. Defendants breached the aforementioned duty, in reducing Plaintiff's monthly benefits from $5,000 to $1,250 and denying the full monthly benefits to Plaintiff for his lifetime. As a direct and proximate result of Defendants' breach of their duty to Plaintiff, Plaintiff has been damaged in an amount in excess of $75,000 and other amounts to be proven at the time of trial, exclusive of attorney's fees and costs.

**WHEREFORE**, Plaintiff Faisal F. Amanatullah, M.D., respectfully prays judgment against Defendants has follows:

1. Breach of Contract: That Plaintiff be awarded past and future damages in an amount in excess of $75,000, exclusive of attorney's fees and costs, plus all future benefits, and prejudgment interest;

2. That Plaintiff be awarded consequential damages in an amount to be reasonably proven at the time of trial for the economic losses suffered as a direct and proximate result of Defendants' bad faith refusal in denying and/or reduce Plaintiff's benefits;

      3.      That Plaintiff be awarded consequential damages for emotional distress due as a proximate cause of Defendants' bad faith refusal to pay Plaintiff's full benefits, as will be more specifically proven at the time of trial;

      4.      That Plaintiff be granted appropriate leave to amend his Complaint to assert a claim for punitive damages; and

      5.      For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

DATED this 23rd day of February, 2015.

                    COOPER & LARSEN, CHARTERED

                    By:    /s/ Reed W. Larsen
                              REED W. LARSEN