UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

FAISAL F. AMANATULLAH, M.D.,

                    Plaintiff,

v.

THE UNITED STATES LIFE
INSURANCE COMPANY OF THE
CITY OF NEW YORK, AIG BENEFIT
SOLUTIONS, AIG AFFINITY
BENEFIT SOLUTIONS,
AMERICANINTERNATIONAL
GROUP, INC. AND AMERICAN
GENERAL LIFE COMPANIES, LLC,

                    Defendants.

Case No. 4:15-CV-00056-EJL

**MEMORANDUM DECISION AND
ORDER**

---

       Pending before the Court in the above-entitled matter are Plaintiff Faisal F.

Amanatullah, M.D. (Amanatullah)'s Motion for Partial Summary Judgment (Dkt. 18),

Defendants The United States Life Insurance Company of the City of New York, AIG

Benefit Solutions, AIG Affinity Benefit Solutions, American International Group, Inc. and

American General Life Companies, LLC's (collectively referred to as "Defendants")

**ORDER - 1**

Motion for Summary Judgment (Dkt. 23) and related motions to strike filed by both parties (Dkts. 27, 28, 36, and 39).   Plaintiff also filed motions relating to punitive damages and non-economic damage caps. (Dkts. 50, 51, and 52).

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.   Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Additionally, because this matter is set for trial in the near future, the Court finds it would be an efficient use of limited judicial resources to remove the referral to the Magistrate Judge for certain motions that are more properly handled by the presiding judge. Therefore, the Court withdraws the referral on docket numbers 27, 28, 36, 39, 50, 51, and 52.

## FACTUAL BACKGROUND

Amanatullah purchased a disability insurance policy from Defendants on February 19, 1987, Policy No. G-189, 553, Certificate No. 2328149 (the Policy). Amantullah became totally disabled before his 50th birthday. The Policy provided Plaintiff with a monthly benefit of $5,000. Plaintiff maintains the Policy provides this $5,000 monthly benefit for his lifetime. Defendants claim the Policy reduces the disability payment to the

**ORDER - 2**

greater of $1,000 or 25% of the monthly benefit on the certificate anniversary following

Amanatullah's 65th birthday. In this case, Defendants argue the reduced benefit would be

$1,250.

The Policy provides:

**LONG TERM DISABILITY BENEFITS**

| | |
|---|---|
| Elimination Period during Disability | See Schedule Page |
| Monthly Benefit | |
|   -for Total Disability | See Schedule Page |
|   -for Residual Disability | An amount determined each month by this formula: |

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \quad \text{x} \quad \text{Monthly Benefit for Total Disability}$$

The first six months of payments for Residual Disability will be the greater of: (a) 50% of the Monthly Benefit for Total Disability; or (b) the Monthly Benefit for Residual Disability determined for each month.

| | |
|---|---|
| Maximum benefit period: | |
|   -if Total Disability begins prior to age 50 | Lifetime |
|   -if Total Disability begins on or after age 50 | To age 70 or on the date 24 monthly benefit payments have been paid, whichever is later |

**Change in Amount of Insurance**

The Monthly Benefit for Total Disability will reduce on your certificate anniversary next following your attainment of age 65, to the greater of $1,000 or 25% of the Monthly Benefit shown on the Schedule Page. However, if the amount shown on the Schedule Page is less than $1,000, it shall remain at the amount shown.

   If you are disabled on your 65th birthday your Monthly Benefit will reduce on the earlier of these dates: (a) your certificate anniversary next following your 65th birthday, if such Monthly Benefit payments have been received for 12 or more months, or (b) on the date you have received 12 Monthly Benefit payments for the then current disability.

   Any other decrease in the amount of insurance will take effect on the date of receipt by the authorized agent of the Policyholder of your written request for the decrease.

**ORDER - 3**

*See* Complaint, Exhibit A, G-19001 SCH,, Dkt. 1-1, p.7. The "Monthly Benefit" of $5,000 comes

from Exhibit A, G 19001 SCH, Dkt. 1-1, p.1. The Schedule Page also states the Monthly Benefit

Amount is $5,000. *Id.*

In November of 2008, Plaintiff spoke with John Butryman, Senior Case Manager

for Defendants to confirm his monthly payment was a lifetime benefit as Plaintiff was

obtaining a mortgage and needed to provide proof of his income. Mr. Butryman orally

confirmed the monthly benefit was a lifetime benefit and sent a letter to Amanatullah

stating:

> We are writing to you in response to our phone conversation today. This
> letter is to confirm you currently receive $5,000 per month, post tax under
> the following disability policy. Since your disability began prior to the age
> of 50, your policy states you are eligible to receive this monthly benefit for
> as long as you live and as long as you continue to satisfy the provisions of
> this policy.

Affidavit of Faisal F. Amanatullah, M.D., Exhibit B, Dkt. 19-2.

Plaintiff claims he relied on this letter as proof he would be receiving the $5,000

benefit for the rest of his life and took out a mortgage and made other purchases relying on

this stream of income.

In March of 2014, Plaintiff spoke with Senior Claims Manager Bernadine Luddy as

he had not received his monthly benefit check. He was advised the check had been sent to

his ex-wife instead of Plaintiff. Plaintiff alleges Ms. Luddy became hostile toward him

**ORDER - 4**

when he notified Defendants of the error. Ms. Luddy also indicated she would be reviewing the file and that his benefit would be reduced in September 2014. Defendants reduced Plaintiff's benefit to $1,250 on September 1, 2014.

Between March and November of 2014, Plaintiff continued to try to explain his position and have Defendants reinstate his $5,000 monthly payment. Defendants did not change their position. Plaintiff filed his Complaint on February 23, 2015 alleging bad faith, breach of contract, promissory estoppel and negligent adjustment. Plaintiff moves for summary judgment on the breach of contract claims and Defendants move for summary judgment on all claims.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

**ORDER - 5**

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**ORDER - 6**

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

## ANALYSIS

### Breach of Contract Claim

There are cross motions for summary judgment on the breach of contract claim, Plaintiffs argues the language of the Policy provides for a lifetime benefit of $5,000 or in the alternative that the Policy is ambiguous and must be construed in the insured's favor. Defendants argue the Policy is not ambiguous and clearly sets forth there is a reduction in benefits when insured reach a certain age. Additionally, Defendants argue an employee of Defendants cannot modify the terms of a policy so any statements by Mr. Butryman are not binding on Defendants.

**ORDER - 7**

Defendants argue the choice of law provision in the Master Policy governs even if the insured resides outside the designated state. Defendants claim the Master Policy is attached as Ex. A to the Luddy Declaration, Dkt. 23-7. This includes one page identifying the policy is Group Policy No. G-189,553 and the Policyholder is the American Medical Association. This page states:

> APPLICABLE LAW
> This policy is issued in and governed by the laws of Illinois.

The remainder of the Master Policy appears to be slightly different than the Policy attached to Plaintiff's Complaint which also includes a Schedule Page.   The Master Policy attached to Ms. Luddy's Declaration does not have a Schedule Page since the Master Policy is not insured specific. In this case, the disputed language in the Schedule of Benefits section appears to be the same in both the Policy attached to Plaintiff's Complaint and the waiver policy attached to Ms. Luddy's declaration.

Plaintiff argues Idaho law applies to this federal diversity case based on conflict of law principles. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). This is only true if there was no applicable law clause in the original Master Policy. If the Master Policy in effect at the time Plaintiff's effective date has an Applicable Law clause and that page was provided to Plaintiff and made part of his Policy, then the contract, not the conflict of laws principles control.

It is troubling to the Court that the copy of Policy provided by Plaintiff does not have a choice of law provision included and the Schedule Page indicates the Policy had an

effective date of February 19, 1997 while the Master Policy supplied by Defendants

indicates that the policy will take effect on September 1, 1997 and has a one page

document that sets for the policyholder as the AMA, the Premium/Payments; Effective

Date; Policy Anniversaries; and Applicable Law sections of the Master Policy which all

seem to be critical information that should be provided to every Policy holder, yet it

appears this was not done.

Moreover, it seems unfair and unjust to an insured if the applicable law section is

changed *after* the Policy was purchased. Without more documentation, the Court cannot

confirm if there is an applicable law clause to apply for the group policy purchased by

Plaintiff in February 1997 (Group Policy 90-10613-47 issued by the prior carrier Sentry

Life Insurance Company and/or if Plaintiff was ever provided a copy of the original Master

Policy which many have contained a choice of law provision or even the Master Policy

when the group policy was taken over by the Defendants, effective September 1, 1997.

Defendants acknowledge Idaho courts have not addressed whether the choice of law

provision in a master policy for a national group policy controls. The Court notes other

courts have held "[g]iving effect to the choice-of-law provision in the Master Policy is also

consistent with the results reached by courts in other states." *See Karpenski v. Am. Gen.*

*Life Companies, LLC*, 999 F.Supp 2d 1218, 1229 (W.D. Wash. 2014).

Since there is no evidence that the Master Policy attached to Ms. Luddy's D

eclaration was ever provided to the insured, the Court finds Plaintiff is not bound by the

**ORDER - 9**

one page of the Defendants' Master Policy G-189,553 that includes the Applicable Law clause and was issued after he purchased his policy. It would simply be unfair for an insurance company to change such a material term without notice or acceptance of the change by the insured.

Under this factual circumstance and in applying the conflict of law principles set forth in *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002), the Court finds Idaho law should apply in this case. Additionally, the Court finds it   would not make a difference in interpreting the Policy whether the Court applies Idaho or Illinois in interpreting the Policy, so the Court's finding on the choice of law is not determinative of the outcome on the motion for summary judgment.

Interpretation of insurance policies is similar in Illinois and Idaho. Under Illinois law, "[a]n insurance contract is a contract and must be interpreted in accordance with the rules of contract construction." *Smagala v. Owen*, 717 N.E. 3d 491, 495 (Ill. App. 1999). In Idaho, "[t]he meaning of [an] insurance policy and the intent of the parties must be determined from the plain meaning of the insurance policy's own words." *Nat'l Union Fire Ins. Co. of Pittsburgh, P.S. v. Dixon*, 112 P.3d 825, 828 (Idaho 2005). Whether a contract is ambiguous is a question of law. *Knipe Land Company v. Robertson*, 259 P.3d 595 (Idaho 2011). If an insurance policy is ambiguous, it is construed in favor of the insured. *See Clark v. Prudential Property and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003). This would be true under Illinois law as the rules of contract construction require ambiguity to be

**ORDER - 10**

interpreted in favor of the party that did *not* draft the contract. Here, Defendants drafted the Policy so any ambiguity would be interpreted in favor of the insured under the law of either state.

The first question to be addressed by the Court is whether or not under the plain reading of the Policy it expressly provides for a $5,000 lifetime benefit to the insured? The Court finds the Policy is ambiguous as to the monthly benefit amount.

As succinctly stated in *Knipe Land Company,* at 600-01:

When interpreting a contract, this Court begins with the document's language. In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument. Interpreting an unambiguous contract and determining whether there has been a violation of that contract is an issue of law subject to free review. A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical.

Here, the Court finds there are two different reasonable interpretations of the language in the Policy. The Court reaches this conclusion based on the four corners of the contract and without considering the interpretation of the Policy by Defendants agents Mr. Butryman or Ms. Luddy. Nor does the Court rely on the opinion of Plaintiff's retained insurance expert as this is a question of law for the Court to decide.

The Schedule Page says unequivocally the month benefit amount is $5,000 with no footnote or other reference to a limitation changing the amount after the insured turns 65. The Schedule of Benefits section (Dkt. 1-1, p. 7) set forth earlier in the Order arguably puts the insured on notice that there is a "Change in Amount of Insurance" (in bold letters)

**ORDER - 11**

clause. However, the title of the clause in the insurance contract does not put the insured on notice that it is really a "Change in Monthly Benefit After Age 65" clause. It does not include the words monthly benefit in the heading at all. Nor does it signal there are exclusions in the Policy to the monthly benefit being paid out in full. The term "EXCLUSIONS" is used in the Policy on page 7 (Dkt. 1-1, p.12).   But it is not used in the section "Change in Amount of Insurance" nor is there a reference to the "Change in Amount of Insurance" section in the EXCLUSIONS" section of the Policy.

The "Change in Amount of Insurance" paragraph does not conspicuously limit the monthly benefit when the Policy is read as a whole. This section is confusing since the paragraph appears to be discussing the monthly benefit calculation not a change in "insurance." Moreover, the term "insurance" used in the title of the section is not a term defined in the Policy.

The Court agrees the first paragraph under the "Change in Amount of Insurance" does discuss the monthly benefit for total disability:

> The Monthly Benefit for Total Disability will reduce on your certificate anniversary next following your attainment of age 65, to the greater of $1,000 or 25% of the Monthly Benefit shown on the Schedule Page. However if the amount shown on the Schedule Page is less than $1,000, it shall remain the amount shown.

But this paragraph combined with other statements in the Policy right above this paragraph entitled "LONG TERM DISABILITY BENEFITS" (in bold and all capital letters) indicates the monthly benefit for total disability is as shown on the Schedule Page and will

**ORDER - 12**

be paid out for the insured lifetime if he/she is totally disabled before the age 50.   These statements are inconsistent.

Additionally, in reviewing the Policy as a whole for clarification there appears to be another inconsistency when one reads page 4 of the Policy (Dkt. 1-1, p. 9):

LONG TERM DISABILITY BENEFITS

If you become Totally Disabled while insured under the group policy and continue to be so Disabled past the Elimination Period, United States Life will pay to you the benefits described below.

The Elimination Period is shown on the Schedule Page.

DEFINITIONS

- TOTAL DISABILITY means your inability to perform the substantial and material duties of your current occupation beyond the end of the Elimination Period.

. . .

BENEFITS

The Monthly Benefit for Total Disability will begin to accrue on the day after the Elimination Period ends. It will be paid in the amount shown on the Schedule Page.

Reading the plain language of these two sections (LONG TERM DISABILITY BENEFITS and BENEFITS) together indicates if you are totally disabled, the monthly benefit will be the monthly benefit shown on the Schedule Page which in this case is $5,000. These sections say nothing about the monthly benefit being reduced at a certain age. Instead, they clearly state if you are totally disabled while insured under the Policy your monthly benefit will be paid in the amount shown on the Schedule Page. If the insurance company intended to change this monthly benefit

**ORDER - 13**

as is arguably discussed in the "Change in Amount Insurance" paragraph on page 2 of the Policy (Dkt. 1-1, p. 7) then one would think there would be a reference to this section of the Policy or some notice to the insured that his/her monthly benefit would change one year after the insured turns 65. The Policy does not include any exceptions in the BENEFITS section or on the Schedule Page which provides the MONLTHLY BENEFIT AMOUNT.

The Court finds it cannot interpret and apply the "Change in Amount of Insurance" clause in isolation and ignore all other references to the "monthly benefit" contained in the Policy. For this reason, the Court finds as a matter of law, the Policy is ambiguous regarding the monthly benefit amount as there two reasonable interpretations under differing sections of the Policy that set forth the monthly benefit amount1.

Having found the benefit amount is ambiguous, the Court will construe the contract in favor of the insured who did not draft the Policy. Construing the Policy in favor of the insured, the Court finds it is a reasonable interpretation the monthly benefit amount would be $5,000 for the lifetime of Amanatullah who was totally disabled before the age of 50. Plaintiff is entitled to summary judgment on this claim and Defendants' motion for summary judgment on this claim is denied.

---

1 The Court is not alone in determining the Policy is ambiguous as two different agents of Defendants reached differing interpretations of the same policy.

ORDER - 14

**Promissory Estoppel**

Plaintiff also seeks summary judgment on his claim the Defendants cannot change his monthly benefit based on the letter from Mr. Butryman which Plaintiff relied on before incurring certain debt and making certain purchases. This matter is moot based on the Court's ruling on the breach of contract claim.

**Bad Faith**

Defendants move for summary judgment on Plaintiff's claim of bad faith. Plaintiff responds that he has provided evidence of bad faith and this claim survives summary judgment.

To prove the tort of insurance bad faith, the insured must prove that (1) the insurer intentionally and unreasonably denied or withheld payment; (2) the claim was not fairly debatable; (3) the denial or failure to pay was not the result of a good faith mistake; and (4) the resulting harm is not fully compensable by contract damages. *Weinstein v. Prudential Property and Cas. Ins. Co.*, 233 P.3d 1221, 1237 (Idaho 2010) (citing *Robinson v. State Farm Mutual Auto Ins. Co.*, 45 P.3d 829, 832 (Idaho 2002)).

In this case, for purposes of the motion for summary judgment and viewing the facts in a light most favorable to Plaintiff, the Court finds Defendants are entitled to summary judgment on this claim.   It is clearly disputed whether Defendants

"unreasonably denied" payment to Plaintiff. However, even assuming Plaintiff can establish this element, the Plaintiff cannot establish the second and third elements of a bad faith claim.

First, the denial of full monthly benefits was "fairly debatable." Until this Court ruled the Policy was ambiguous, the Defendants' interpretation of the Policy was fairly debatable.

> Of course the mere failure to immediately settle what later proves to be a valid claim does not of itself establish "bad faith." As indicated earlier, the insured must show the insurer "intentionally and unreasonably denies or delays payment...." *Rawlings, supra,* 726 P.2d at 572.   An insurer does not act in bad faith when it challenges the validity of a "fairly debatable" claim, or when its delay results from honest mistakes. *Id.,* 726 P.2d at 572–573; *accord, Noble, supra,* 624 P.2d at 868.

*White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 100, 730 P.2d 1014, 1020 (1986)

Second, the Court also finds the failure to pay the claim was the result of a good faith mistake interpreting the Policy since there were two reasonable interpretations possible. Having found for these reasons, Plaintiff cannot succeed as a matter of law on the bad faith and summary judgment in favor of Defendants is appropriate.


**Negligent Adjustment**

Defendants argue the negligent adjustment claim must be dismissed as it is included in the tort of bad faith. The Court finds that the tort of negligent adjustment can be an independent cause of action in certain cases. *See Selkirk Seed Company v.*


**ORDER - 16**

*State Insurance Fund*, 22 P.3d 1028, 1032-33 (Idaho 2001). In *Selkirk*, the insured business was arguing the insurance company was negligent in adjusting and overpaying a claim of an injured worker which cause the insured's risk rating to increase and ultimately increased Defendants' cost for worker's compensation insurance. The insured argued the tort of negligent adjustment was independent of the tort of bad faith on the part of the insurance company. The Idaho Supreme Court distinguished the claim in *Selkirk* from the claim in *Featherston v. Allstate Ins. Co.*, 875 P.2d 937 (1994) and found the narrow circumstances for a negligent adjustment claim did not exist. This is because there was not voluntary assumption of an act by the insurance company to do something more than the insurance contract provided.

That is also the same situation in the present case. Plaintiff claims the insurance companies were negligent in not timely adjusting his claim. But under the facts of this case, this is the same claim as a bad faith claim for intentionally not paying Plaintiff's claim. Because the Court has found that the Defendants did not act in bad faith, no separate claim for negligent adjustment is appropriate. Moreover, Plaintiff has failed to allege the Defendants voluntarily undertook to complete an act outside the contract and did so negligently. Therefore, the narrow exception of *Featherston* does not apply. Instead, Defendants merely contested (in good faith) the validity of the claim under the terms of the Policy. Defendants' motion for summary judgment on this claim should be granted.

**ORDER - 17**

**Motions to Strike**

The Court has reviewed the three motions to strike in this case related to evidence regarding the motions for summary judgment. The Court finds the objected to portions of declarations or expert opinions were not relied upon by the Court in reaching its decision on the claims. Therefore, the motions are denied as being moot.

The Court has also reviewed the Defendants' Motion to Strike the Plaintiff's Motion for Partial Summary Judgment (Dkt. 28). Having previously determined that Plaintiff's motion for partial summary judgment should be granted, this motion to strike the motion is denied.


**Motion to Amend Complaint to Add Punitive Damages Claim and M**

This is a case involves an ambiguous insurance policy. However, until the Court determined as a matter of law the Policy was ambiguous, there arguably was no willful or malicious conduct on the part of the insurance companies denying Plaintiff's interpretation of the same Policy.

The decision of whether to submit the question of punitive damages to a jury rests within the sound discretion of the trial court. *Manning v. Twin Falls Clinic & Hospital*, 830 P.2d 1185, 1190 (Idaho 1992). Therefore, this Court must determine if the record contains substantial evidence to support the reasonable likelihood of the award of punitive

**ORDER - 18**

damages to allow the pleadings to be amended. In considering the motion to amend for punitive damages, the Court views the facts and inferences in a light most favorable to the Plaintiffs.

The Court begins its analysis by noting that punitive damages are generally disfavored in Idaho. *Cheney v. Palos Verdes Inv. Corp.,* 665 P.2d 661 (Idaho 1983). An award of punitive damages requires the plaintiff to show that the defendant "acted in a manner that was an 'extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding or disregard for its likely consequences.'" *Manning* 1190 (citing *Cheney*). The Idaho Supreme Court went on to hold that "justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence;' 'malice, oppression, wantonness;' or simply 'deliberate or willful.'" *Id.*

In this case, the Court finds in viewing the facts in a light most favorable to Plaintiff, Plaintiff has not established facts that a reasonable jury could find rise to the level of malice, deliberate or willful conduct by Defendants to deny Plaintiff his claimed insurance benefit. Simply put, the Policy interpretation by Defendants was not obviously unreasonable to make the withholding of the full payment under the Policy an action for which Defendants should be subject to punitive damages. Therefore, the Court will deny the motion to amend the Complaint to state such a claim.

**ORDER - 19**

**Motion to Preclude Application of Non-Economic Damages Limitation**

Plaintiff seeks the Court to allow a jury to award non-economic damages in excess of the statutory cap set forth in Idaho Code § 6-1603. The Court must deny this request based on the fact that the claims that would even allow non-economic damages to be considered have been dismissed making this request moot. Contract based claims do not allow emotional distress damages under Idaho law. *Brown v. Fritz*, 699 P.2d 1371, 1377 (1985). Additionally, Plaintiff has not identified what particular damages should be exempt from the non-economic damages cap if it was applicable and has not established facts to warrant the award of such damages. For these reasons the motion is denied.

## CONCLUSION

The Court finds that based on the ambiguous language of the Policy, the Policy must be construed in favor of Plaintiff and he is entitled to the lifetime benefit of $5,000 per month for his disability. All other claims of Plaintiff are denied as a matter of law.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgement (Dkt. 18) is GRANTED IN PART AND DENIED IN PART. The motion is granted on the breach of

contract claim and denied as to the promissory estoppel claim which is deemed moot by the ruling on the breach of contract claim.

2. Defendant's Motion for Summary Judgment (Dkt. 23) is GRANTED IN PART AND DENIED IN PART. The motion is granted on Plaintiff's claims of bad faith and negligent adjustment, denied on the breach of contract claim and the promissory estoppel claim is dismissed as being moot.

3. The parties' Motions to Strike (Dkts. 27, 28, 36 and 39) are deemed MOOT.

4. Plaintiff's Motion for Relief from Scheduling Order (Dkt. 50) is DENIED.

5. Plaintiff's Motion to Amend the Complaint to Allege a Claim for Punitive Damages (Dkt. 51) is DENIED.

6. Plaintiff's Motion to Preclude Application of the Non-Economic Damages Limitation (Dkt. 52) is DENIED.

7. Plaintiff's counsel shall submit a proposed Judgment consistent with this Memorandum Decision and Order for the Court's consideration.

Dated: February 08, 2017

Honorable Edward J. Lodge
United States District Judge

**ORDER - 21**